IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


VICKIE LEE DARLING,                        )
                                           )
                        Plaintiff,         )
                                           )
             vs.                           )
                                           )
CAROLYN COLVIN, Acting Commissioner,       )
Social Security Administration,            )
                                           )          No. 3:13-cv-0187-HRH
                        Defendant.         )
_____)


<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Titles

II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.  Plaintiff has timely

filed her opening brief,[1] to which defendant has responded.[2]    Oral argument was not

requested and is not deemed necessary.

<u>Procedural Background</u>

Plaintiff is Vickie L Darling.  Defendant is Carolyn W. Colvin, acting Commissioner

of Social Security.

_____

    [1]Docket No. 15.

    [2]Docket No. 16.

Plaintiff applied for Title II and Title XVI benefits in 2007, alleging that she was disabled due to chronic shoulder, knee and chest wall pain.[3] Plaintiff alleged an onset of disability date of December 2, 2002.[4] Plaintiff's 2007 applications were denied on May 16, 2008.[5] The decision stated that

> [t]he medical evidence shows that you have a history of chronic pain complaints, right shoulder problems, as well as depression. We do agree that you would have some limitations as a result of your conditions however also find that you would not be precluded from all classes of occupation in the National Economy. Given your age and level of achieved education you would be able to make a vocational adjustment to other more sedentary types of occupations.[6]

On August 5, 2010, plaintiff again applied for Title II and Title XVI benefits, alleging that she became disabled on December 2, 2003. Her onset date was later amended to January 30, 2008.[7] Plaintiff alleged that she was disabled because of depression, back injury, hip replacement, migraines, and chronic pain. Plaintiff's applications were denied initially and upon reconsideration. After a hearing on October 26, 2011, an administrative law judge (ALJ) denied plaintiff's claim. On July 25, 2013, the Appeals Council denied

---

[3]Admin. Rec. at 141.

[4]Admin. Rec. at 141.

[5]Admin. Rec. at 69.

[6]Admin. Rec. at 69.

[7]Admin. Rec. at 20.

plaintiff's request for review, thereby making the ALJ's November 10, 2011 decision the final decision of the Commissioner. On September 26, 2013, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Factual Background

Plaintiff was born on June 4, 1959. Plaintiff graduated from high school and attended some college. Plaintiff's past relevant work includes work as a legal secretary, a CNA, a unit clerk, a secretary, and a clerk typist.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through September 30, 2008."[8] The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[9]

---

[8]Admin. Rec. at 22. To be entitled to disability benefits under Title II, plaintiff "must establish that her disability existed on or before" September 30, 2008. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

[9]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not,

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since January 30, 2008, the amended alleged onset date...."[10]

At step two, the ALJ found that plaintiff had "the following severe impairments: osteoarthritis of the right shoulder and hips; and obesity...."[11] The ALJ found that plaintiff's "medically determinable mental impairments of situational affective disorder and anxiety considered singly and in combination, do not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."[12] In determining that plaintiff's mental impairments were nonsevere, the ALJ gave "significant weight" to Dr. Campbell's[13] evaluation because he "completed an

---

[9](...continued)
> proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[10]Admin. Rec. at 22.

[11]Admin. Rec. at 23.

[12]Admin. Rec. at 23.

[13]On May 14, 2008, William Campbell, M.D., examined plaintiff. His mental status
(continued...)

objective evaluation with findings that are consistent with the record as well as the State

evaluations[.]"[14]  The ALJ gave "[s]ome weight" to Dr. O'Donnell's[15] evaluation because

---

[13](...continued)
exam revealed that plaintiff's speech rate and tone were normal; her thought content was cynical and pessimistic; her affect was sullen and depressed; she was alert and oriented to person, place, date; she remembered three out of three words at five minutes; she named the last two presidents as Bush and his father; her calculations and spelling were good; her serial 7s were fair, done slowly; her similarities were a bit concrete; her insight was poor because she "takes little responsibility for her situation and identifies with the victim role"; and her judgment was fair because "she would use $500 to get her watch back from the pawn shop, and to buy a gift for her daughter."  Admin. Rec. at 746.  Dr. Campbell's Axis I diagnoses were dysthymia; pain disorder associated with physical and psychological factors; alcohol abuse; and opiate-induced mood disorder.  Admin. Rec. at 747.  Dr. Campbell's assessment was as follows:

> Vickie Lee Darling complains of chronic pain, fatigue and depression.  She describes several unresolved losses.  She has taken narcotic analgesics for most of the last six years.  She has a history of alcohol abuse, and is at risk for using opiates in a non-therapeutic manner.  I suspect that her use of oxycodone is contributing to her affective symptoms on a pharmacologic basis.  Powerful secondary gain factors will tend to reinforce illness behavior.  Her prognosis is poor.

Admin. Rec. at 747.

[14]Admin. Rec. at 23.

[15]On November 7, 2007, William O'Donnell, Ph.D., performed a psychological evaluation.  Dr. O'Donnell's testing revealed that plaintiff had

> average to bright intellectual functioning.  Relative strength was found on tests which measured vocabulary and visual analytical thinking.  Her lowest scores were found on tests of abstract thinking ability (due to depression) and remote

(continued...)

it "was performed prior to [plaintiff's] alleged onset date, it is inconsistent with Dr.

Dowler's[16] assessment,... the State assessments..., and [plaintiff's] recent mental status

---

[15](...continued)
> memory. Academic skills testing found reading and arithmetic to be well within a functional range with no evidence of learning disabilities. Memory test findings, in terms of immediate verbal recall, were average. Mental status testing was marginal, which is thought to be due to major depression. Personality test findings revealed symptoms of major depression with a past history of alcohol abuse which is in remission.

Admin. Rec. at 1187. Dr. O'Donnell opined that "[g]iven the severity of [plaintiff's] depression, along with her chronic pain, it seems unlikely that she is able to work at this time" and that "[g]iven the number of complicating factors in this case, the prognosis for competitive employment at this time appears to be guarded." Admin. Rec. at 1188. Dr. O'Donnell also stated that "Ms. Darling should probably continue with her application for Social Security Disability." Admin. Rec. at 1187.

[16]On March 24 and 25, 2009, Liz Dowler, Ph.D., did a physical capacities evaluation. Dr. Dowler summarized the evaluation as follows:

> On Day 1 I had a frank discussion with Ms. Darling about her chronic pain behavior. We discussed that her pain ratings were too high and did not match her activity level during testing. We discussed her depression and what affect that had on her pain ratings. We concluded that her pain ratings were not as high as she described. She clearly understood and was very pleased and relieved when I stated she had potential to work and to improve. She returned the second day of testing maintaining this attitude. Her pain level reports dropped to a 5-6 and she reported being excited about the prognosis that she was capable of returning to school and work at an appropriate level. I spent time teaching her some exercises to do and we discussed a daily routine that would slowly but consistently increase her activity level.

(continued...)

examinations...."[17]  The ALJ gave "substantial weight" to the opinions of Dr. Winn[18]

[16](...continued)

> Results of the physical assessment demonstrate that she is severely deconditioned and this was having some effect on her pain.  She does have postural imbalances associated with the hips and this can be contributing to her low back pain.  Her shoulder has normal range of motion and she is able to move and use it normally given the deconditioning.  Again, there are some muscle imbalances and the clavicle misalignment can be causing some of her chest muscle pain.

> Results of the physical capacities testing reveals Ms. Darling is functioning at the <u>Sedentary</u> level of physical demand characteristics of work.  She is unable to crouch, kneel or squat so getting to floor level is not functional.  She is limited to occasional standing and walking.  She is able to sit but needs to get up every 60-90 minutes, which is considered normal.  Ergonomic modifications will be needed for a job involv[ing] seated positioning.  She should probably start part time and gradually increase to a full time basis.  Given her history of depression, she will need psychological and psychiatric support.

> All tests were valid.  Ms. Darling was cooperative and consistent.  She appears motivated for work.

Admin. Rec. at 891-892.

[17]Admin. Rec. at 24.

[18]On May 15, 2008, Wandall Winn, M.D., opined that plaintiff's mental impairments were not severe.  Admin. Rec. at 748.  Dr. Winn opined that plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace.  Admin. Rec. at 756.  On January 5, 2011, Dr. Winn stated that there was insufficient evidence to complete a psychiatric review form because "[w]e tried multiple times to get the claimant to cooperate.

(continued...)

because he "is familiar with Social Security Administration regulations, the record supports his findings of no severe impairments, and he completed a recent assessment."[19]

The ALJ considered whether plaintiff met the "paragraph B" criteria. The ALJ found that plaintiff had mild limitations as to activities of daily living, social functioning, and concentration, persistence, or pace.[20] The ALJ also noted that plaintiff had had no episodes of decompensation.[21]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[22] The ALJ considered listing 1.02 (major dysfunction of a joint) and found that plaintiff did not meet this listing.[23] As for plaintiff's obesity, the ALJ concluded that "the medical evidence and [plaintiff's] activity

---

[18](...continued)
She refused to return forms, even the 3369 [the work history form]. We need both physical and psychiatric exams but the claimant is not cooperating. As such, insufficient evidence." Admin. Rec. at 1161.

[19]Admin. Rec. at 24.

[20]Admin. Rec. at 25.

[21]Admin. Rec. at 25.

[22]Admin. Rec. at 25.

[23]Admin. Rec. at 25-26.

level ... show that the limitations caused by [plaintiff's] obesity are not significant enough to equal the severity of any medical listing."[24]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff

> has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can frequently lift and/or carry ten pounds. The claimant can occasionally lift and/or carry twenty pounds. The claimant can sit, stand and walk six hours out of an eight-hour workday. The claimant can occasionally climb ramps and stairs. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally stoop and crouch. The claimant must avoid concentrated exposure to the extreme cold and wetness. The claimant must avoid excessive vibration. The claimant must avoid moderate exposure to unprotected heights and hazardous machinery.[[25]]

The ALJ found plaintiff's statements "concerning the intensity, persistence and limiting effects of" her impairments to be less than credible.[26] The ALJ found plaintiff's statements less than credible because they were "not reasonably consistent with the

---

[24]Admin. Rec. at 26.

[25]Admin. Rec. at 26.

[26]Admin. Rec. at 27.

medical evidence", because "[s]econdary gains issues ... may be present[,]" and because she "can perform a full range of daily activities[.]"[27]

The ALJ considered the third-party reports from plaintiff's aunt[28] and daughter[29] and gave "[s]ome weight" to their statements.[30] The ALJ discounted these reports "because it is unclear how much time these individuals spend with the claimant, they did not describe any treatment that the claimant regularly received for pain and the daily activities reflected that the claimant functioned with few limitations[.]"[31]

The ALJ gave "some weight" to Dr. Dowler's opinion.[32] But, the ALJ rejected Dr. Dowler's opinion that plaintiff was limited to sedentary work because the limitation "seem[s] to reflect [plaintiff's] excessive pain complaints" and plaintiff's "treating surgeon stated [that she] was doing well post right hip replacement."[33] The ALJ gave heavy weight

---

[27]Admin. Rec. at 27-28.

[28]Plaintiff's aunt, Gladys Meacock, completed a third-party function report on December 27, 2010. Admin. Rec. at 180-187.

[29]Tara Wassberg, plaintiff's daughter, completed a third-party function report on June 1, 2011. Admin. Rec. at 215-221.

[30]Admin. Rec. at 28.

[31]Admin. Rec. at 28.

[32]Admin. Rec. at 29.

[33]Admin. Rec. at 29.

to Dr. Zamani's[34] opinion even though it was "made just prior to the amended onset date ... because an objective examination was performed that found few limitations, which is consistent with the record and the State assessments."[35]  The ALJ only gave "[s]ome weight" to Dr. Stockhouse's[36] opinion because "[i]t is unclear ... why he limited [plaintiff] to part-time work."[37]  And, the ALJ gave Dr. Caldwell's[38] opinions "significant weight

---

[34]Mohammad H. Zamani, M.D., examined plaintiff on December 5, 2007 and summarized his findings as follows:

> This examinee has had small surgery of the right shoulder. Function of the shoulder is doing well.  She was told [she has] a cyst in the right hip femoral head and neck, but functionally looks very good and as far as the back is concerned she has good mobility, no sign of any neurological deficit, neurologically intact.  I feel she is capable of working and doing activities as usual.  In my opinion [she] does not need any special treatment at this point.

Admin. Rec. at 540.

[35]Admin. Rec. at 29.

[36]Paul Stockhouse, M.D., was plaintiff's primary care physician at the Alaska Native Medical Center.  In 2007, he opined that plaintiff could frequently lift/carry 10 pounds; could stand/walk for 2 hours; could sit for 4 hours; could work part-time but not full-time; could do no heavy lifting; could not use her right arm repetitively; and could not use her right arm to reach overhead.  Admin. Rec. at 631-632.

[37]Admin. Rec. at 29.

[38]On April 9, 2008, Jay Caldwell, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for at least 2 hours per day; sit about 6 hours; had no push/pull limitations; could occasionally climb ramps/stairs; could never climb ladder/rope/scaffolds; could frequently balance, kneel, and crawl; could
(continued...)

because they were based on a review of the record, the evidence supports [his] findings, and [he is] familiar with the Social Security Administration regulations."[39]

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a unit clerk, legal secretary, secretary, and clerk typist.[40] Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from January 30, 2008, through the date of this decision...."[41]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying

---

[38](...continued)
occasionally crouch; had no restrictions as to reaching, handling, fingering, and feeling; should avoid moderate exposure to extreme cold, vibration, and hazards; and should avoid concentrated exposure to extreme heat, wetness, humidity, noise, and fumes/odors/dust/gases/poor ventilation. Admin. Rec. at 737-740. On January 4, 2011, Dr. Caldwell opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk/sit about 6 hours in an 8-hour work day; was unlimited as to pushing/pulling; could frequently climb ramps/stairs; could never climb ladder/scaffolds; could frequently balance, kneel, and crawl; could occasionally stoop and crouch; was unlimited as to reaching, handling, fingering, and feeling; should avoid concentrated exposure to extreme heat, cold, wetness, humidity, noise, vibration, and fumes/odors/gas/poor ventilation; and should avoid moderate exposure to hazards. Admin. Rec. at 1144-1147.

[39]Admin. Rec. at 30.

[40]Admin. Rec. at 30.

[41]Admin. Rec. at 30.

benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred at step two. At step two, the ALJ found that plaintiff's "medically determinable mental impairments of situational affective disorder and anxiety considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."[42]

---

[42]Admin. Rec. at 23.

Plaintiff states that her step two argument is based on <u>Keyser v. Commissioner</u> <u>Social Security Administration</u>, 648 F.3d 721 (9th Cir. 2011). Keyser alleged disability based on "bullous emphysema, depression, anxiety, and bipolar disorder." <u>Id.</u> at 723. "A year after the onset of disability, Dr. Lahman conducted an agency review of Keyser's psychiatric condition and reported his findings on a Psychiatric Review Technique Form." <u>Id.</u> He noted that Keyser had the medically determinable impairments of depression and anxiety but concluded that she had only mild limitations in three functional areas and no episodes of decompensation. <u>Id.</u> at 723-24. After a hearing, the ALJ issued a written decision in which the ALJ "noted that 'while the claimant's bipolar disorder is a medically determinable impairment, it is not severe. Such was the conclusion of the state agency medical consultant, Frank Lahman, PhD. ... as found in the psychiatric review technique form.'" <u>Id.</u> at 724. At issue in the case was whether the ALJ had erred in finding that Keyser's mental impairments were not severe. <u>Id.</u> at 725. The court observed that 20 C.F.R. § 404.1520a sets out the "special psychiatric review technique" that an ALJ must use in determining whether a claimant's mental impairments are severe. <u>Id.</u>

> Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder[.]

Id. (internal citations omitted). "At the first two levels of review, this technique is documented in a Psychiatric Review Technique Form ('PRTF')." Id. An ALJ, however, "must, document application of the technique in the decision." Id. (internal citations omitted). "[T]he written decision must incorporate the pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas." Id. (internal citations omitted). "In other words," an ALJ's "written decision[] ... should include a narrative rationale, instead of the checklist of conclusions found in a PRTF." Id. (internal citations omitted). The court found that in Keyser's case, the ALJ erred at step two because "the written decision did not document the ALJ's application of the technique and did not include a specific finding as to the degree of limitation in any of the four functional areas." Id. at 726. The court found it insufficient that "[t]he decision simply referenced and adopted the PRTF completed earlier by Dr. Lahman." Id. The court then held that "[a]n ALJ's failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has a 'colorable claim of mental impairment.'" Id. (quoting Gutierrez v. Apfel, 199 F.3d 1048, 1050 (9th Cir. 2000)).

To the extent that plaintiff is arguing that the ALJ's written decision failed to document the application of the psychiatric review technique, that argument fails. The ALJ clearly applied the technique as evidenced by the fact that the ALJ found that plaintiff had

medically determinable mental impairments and then considered what limitations flowed from those impairments.[43]

To the extent that plaintiff is arguing that the ALJ's written decision did not include specific findings as to the degree of limitation in any of the four functional areas, that argument also fails. The ALJ expressly addressed each of the four functional areas and found that plaintiff had only mild limitations in the first three and no episodes of decompensation.[44]

Plaintiff then seems to argue that the ALJ erred in relying on Dr. Winn's May 15, 2008 opinion to determine that her mental impairments were not severe. Plaintiff first argues that it was improper for the ALJ to consider a May 15, 2008 opinion when she did not file her application for benefits until August 5, 2010. This argument is meritless. Plaintiff's alleged onset of disability date is January 30, 2008. It was entirely proper for the ALJ to consider medical evidence from 2008.

Plaintiff also argues that it is impossible to tell what evidence Dr. Winn reviewed in order to reach his May 15, 2008 conclusion that her mental impairments were not severe. Dr. Winn explained that opinion as follows:

> ADL's: Claimant takes care of all personal care independently and without self-reported difficulty. She is able to take

---

[43]Admin. Rec. at 23-25.

[44]Admin. Rec. at 25.

medication without reminders, and seek medical treatment and social services on her own. Claimant prepares her own meals, but alleges that she doesn't do any house chores - though she lives in a house with friends which may be why. She is able to manage her finances when she has money.

Social: Claimant likes to play the victim, and takes little to no responsibility for her situation. Claimant gets out of the house on a daily basis, drives or rides with others. She shops in stores on weekly bases for 1-2 hours. She talks to friends on the phone daily, and goes to the Denaa [Yeets'] program once a week and is learning to bead. Claimant states her meds make her angry at family members. Claimant states she is "okay" with authority figures.

Concentration/Persistence/Pace: No psychomotor agitation or retardation noted on examination. She is alert and fully oriented, memory was intact, calculations were good, she was able to concentrate and spell "world" forwards and backwards with no difficulty, she was able to do serial sevens but had two errors out of 5 iterations. She did not appear to have significant problems with inattention, comprehension or difficulty remembering her own history. Claimant reports no problems with verbal or written instructions.[45]

Plaintiff's argument is meritless. Dr. Winn's opinion makes reference to Dr. Campbell's mental status exam.[46] It also tracks plaintiff's March 20, 2008 function report.[47]

------

[45]Admin. Rec. at 758.

[46]Admin. Rec. at 746.

[47]Plaintiff reported that she had no problems with personal care; that she could prepare simple meals but it would take her 1-2 hours to do so; that she does no household chores because she is in too much pain; that she goes outside every day; that she could drive a car; that she goes grocery shopping weekly for 1-2 hours; that she talks to friends
(continued...)

Thus, it is clear what evidence Dr. Winn reviewed to reach his conclusions that plaintiff's mental impairments were nonsevere.

Plaintiff next takes issue with the fact that the ALJ mentioned that Dr. Winn attempted to update his assessment on January 5, 2011, but was unable to do so because plaintiff had not returned the appropriate forms.[48] On January 5, 2011, Dr. Winn stated that there was insufficient evidence to complete a psychiatric review form because "[w]e tried multiple times to get the claimant to cooperate. She refused to return forms, even the 3369 [the work history form]. We need both physical and psychiatric exams but the claimant is not cooperating. As such, insufficient evidence."[49] Plaintiff argues that Dr. Winn's "accusation" that she was not cooperating is not supported by the record.

The note about plaintiff's cooperation was a result of attempts by Jamie Lang, Brenda Wright, and other agency staff members to contact plaintiff and get updated information. On October 5, 2010, a staff member attempted to call plaintiff and got a

---

[47](...continued)
daily; that she is learning to bead; that she believes her meds are making her angry at family members; that she could walk 100 yards; could pay attention for 30 minutes; could follow written and oral instructions okay; gets along with authority figures okay; and does not handle stress very well. Admin. Rec. at 151-156.

[48]Admin. Rec. at 24.

[49]Admin. Rec. at 1161.

message that plaintiff's phone was no longer in service.[50]  The staff member then called

plaintiff's aunt to get a current phone number.  Plaintiff's aunt told the staff member that

plaintiff "is very sad and is very disabled – she cannot function.  It is [] deep and 'inbred'

and her family feels very sad about her condition."[51]  On that same day, October 5, first-

and third-party disability function report forms and work history forms were sent to

plaintiff and to her aunt.[52]  On October 27, 2010, plaintiff called to report that she had

misplaced the forms and asked that they be resent.[53]  The forms were resent on October 28,

2010.[54]  Sometime thereafter, Lang advised Wright that she still did not have plaintiff's

forms and asked Wright to contact plaintiff "and stress importance.  there may be a mental

component here so your help is extremely important."[55]  Lang stated that plaintiff had until

December 4, 2010 to respond.[56]  On January 6, 2011, Lang noted that "we tried multiple

times to get the claimant to cooperate.  She refused to return forms, even the 3369.  We

---

[50]Admin. Rec. at 1164.

[51]Admin. Rec. at 1163.

[52]Admin. Rec. at 1163.

[53]Admin. Rec. at 1163.

[54]Admin. Rec. at 1163.

[55]Admin. Rec. at 1163.

[56]Admin. Rec. at 1163.

need both physical and psychiatric exams but the claimant is not cooperating. As such, insufficient evidence."[57]

Plaintiff contends that the foregoing shows an uncertainty within the agency as to whether it had successfully provided her with the forms for completion and that when plaintiff was contacted, she was uncertain and confused. However, there is nothing in the foregoing that suggests uncertainty on the agency's part or that plaintiff was uncertain and confused. Rather, what the foregoing shows is that the forms were sent to plaintiff twice and she still did not return them. There was nothing improper about the ALJ noting that in 2010, Dr. Winn had attempted to update his opinion but plaintiff had failed to cooperate because she did not submit the required forms.

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Plaintiff had a diagnosis of major depression and received mental health counseling on a consistent basis at Southcentral Foundation from February 2008 through January 2009[58] and again from July 2009 through November 2011.[59] But, that does not mean that plaintiff's mental impairments were severe. "An impairment or combination of impairments can be found 'not

---

[57]Admin. Rec. at 1164.

[58]Admin. Rec. at 993-997.

[59]Admin. Rec. at 922-992 & 1173-1182.

severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Id. (quoting SSR 85–28). The only evidence that plaintiff's mental impairments would have more than a minimal impact on her ability to work was Dr. O'Donnell's assessment. Dr. O'Donnell found that plaintiff's depression affected her attention and he indicated that plaintiff's depression generally would affect her ability to work.[60] The ALJ rejected Dr. O'Donnell's opinion because 1) his assessment had been completed prior to the alleged onset date of disability, 2) it was inconsistent with Dr. Dowler's assessment that plaintiff's pain complaints were exaggerated, 3) it was inconsistent with Dr. Winn's opinion, and 4) recent mental status exams revealed few deficits.[61]

At step two, the ALJ is required to provide clear and convincing reasons for rejecting an uncontradicted opinion of an examining physician or specific and legitimate reasons if the opinion is contradicted. Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). Dr. O'Donnell's opinion was contradicted by Dr. Winn's and Dr. Campbell's opinions and thus the ALJ was required to give specific and legitimate reasons for rejecting Dr. O'Donnell's opinion.

---

[60]Admin. Rec. at 1186-1187.

[61]Admin. Rec. at 24. Contrary to defendant's contention, the ALJ did not reject Dr. O'Donnell's opinion because it was not based on objective evidence.

The first reason given by the ALJ was that Dr. O'Donnell's assessment was done prior to January 30, 2008, the alleged onset date of disability. This was not a legitimate reason to reject Dr. O'Donnell's opinion. Dr. O'Donnell's assessment was done on November 7, 2007, only three months prior to plaintiff's alleged onset date. In order to be entitled to Title II disability benefits, plaintiff was required to show that she was disabled as of January 30, 2008. An assessment done three months prior to the alleged onset date would be relevant. In addition, when assessing plaintiff's RFC, the ALJ gave "heavy" weight to Dr. Zamani's opinion even though Dr. Zamani had examined plaintiff prior to her alleged onset date.[62] It is not legitimate for the ALJ to reject one examining source's opinion because the examination was done prior to the alleged onset date, while giving heavy weight to the opinion of another examining source whose examination was also done prior to the alleged onset date.

The second reason given by the ALJ was that Dr. O'Donnell's assessment was inconsistent with Dr. Dowler's opinion that plaintiff's pain complaints were out of proportion to her testing abilities. This also was not a legitimate reason for rejecting Dr. O'Donnell's opinion. Dr. Dowler was assessing plaintiff's physical capacities, not her mental capacities. The fact that plaintiff may have been exaggerating her pain complaints is unrelated to Dr. O'Donnell's assessments that plaintiff's pace was slow and that her

---

[62]Admin. Rec. at 29.

depression affected her attention. These assessments were not based on plaintiff's subjective pain complaints but on Dr. O'Donnell's observations of plaintiff's mental capacities.

Another reason the ALJ gave for rejecting Dr. O'Donnell's opinion was that plaintiff's recent mental status exams revealed few deficits. On July 19, 2011, plaintiff's mental status exam showed that her

> [e]ye contact [was] good. Speech normal rate. Mood mildly depressed. Affect congruent. Thought process coherent and logical. Thought content appropriate. No evidence of psychosis. Denies suicidal ideation. Alert and oriented x4. Concentration and attention good. Memory intact. Insight fair. Judgment fair.[63]

On June 17, 2011, plaintiff's mental status exam showed that her

> [e]ye [was] contact good. Speech normal rate. Mood mildly depressed. Affect congruent. Thought process coherent and logical. Thought content appropriate. No evidence of psychosis. Denies suicidal ideation. Alert and oriented x4. Concentration and attention good. Memory intact. Insight fair. Judgment fair.[64]

These two mental status exams, which were the most recent exams in the record, do show that plaintiff had few deficits associated with her depression. This was a legitimate reason for the ALJ to reject Dr. O'Donnell's opinion.

---

[63]Admin. Rec. at 1173.

[64]Admin. Rec. at 1174.

The ALJ also rejected Dr. O'Donnell's opinion because it was inconsistent with Dr. Winn's opinion that plaintiff did not have any severe mental impairments. While the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinions of an examining physician, <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir. 1995), this was not the sole legitimate reason the ALJ gave for rejecting Dr. O'Donnell's assessment. As discussed above, the ALJ also properly rejected Dr. O'Donnell's opinion because plaintiff's recent mental status exams showed relatively few deficits.

The ALJ gave two specific and legitimate reasons for rejecting Dr. O'Donnell's opinion. Thus, the ALJ properly rejected Dr. O'Donnell's opinion, which was the only evidence that plaintiff's mental impairments had more than a minimal effect on her ability to work  The ALJ's finding that plaintiff's mental impairments were nonsevere was supported by substantial evidence, in the form of Dr. Campbell's and Dr. Caldwell's opinions. The ALJ did not err at step two by finding that plaintiff's mental impairments were nonsevere.

Plaintiff next argues that the ALJ erred in finding her pain and symptom testimony less than credible. "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009). "'First, the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if []he gives 'specific, clear and convincing reasons' for the rejection." Id. (quoting Lingenfelter, 504 F.3d at 1036). An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude [that] the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (9th Cir. 1991)).

The ALJ found plaintiff's pain and symptom statements less than credible because plaintiff's "subjective complaints [were] not reasonably consistent with the medical evidence"; because "secondary gain issues may ... be present"; and because plaintiff "can perform a full range of daily activities[.]"[65] Plaintiff only challenges the second reason.

Plaintiff argues that the presence of secondary gain issues was not a clear and convincing reason to find her pain statements less than credible. The ALJ stated that "Dr. Campbell opined that powerful secondary gain factors tended to reinforce [plaintiff's] pain

---

[65]Admin. Rec. at 27-28.

complaints."[66]  Plaintiff argues that this is a mischaracterization of Dr. Campbell's opinion. Plaintiff contends that Dr. Campbell made a general statement that "[p]owerful secondary gain factors will tend to reinforce illness behavior" but that he did not assign an ulterior motive to plaintiff's pain complaints.  Plaintiff contends that it is entirely reasonable for a person such as herself to seek Social Security benefits, given that the purpose of such benefits is to provide financial support for those who are disabled.

Even assuming that the presence of secondary gain issues was not a clear and convincing reason to find plaintiff's pain and symptom testimony not credible, the ALJ did not err as to credibility.  The ALJ gave two other reasons for finding plaintiff's pain and symptom testimony less than credible.  Plaintiff does not challenge the other two reasons given by the ALJ and thus the court will presume those reasons were clear and convincing. See Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1110 (D. Ariz. 2005) (citing Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001) ("A reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision.").  Because two of the reasons given by the ALJ are presumably valid, any error as the secondary gain issue would be harmless.  See Carmickle v. Comm'r, Soc. Sec. Admin, 533 F.3d 1155, 1162 (9th Cir. 2008).

_____

[66]Admin. Rec. at 28.

Plaintiff next argues that the ALJ's RFC was flawed because the ALJ improperly discounted Dr. Dowler's opinion. Dr. Dowler, who was an examining source, opined that plaintiff was

> functioning at the <u>Sedentary</u> level of physical demand charac-teristics of work. She is unable to crouch, kneel or squat so getting to floor level is not functional. She is limited to occasional standing and walking. She is able to sit but needs to get up every 60-90 minutes, which is considered normal. Ergonomic modifications will be needed for a job involv[ing] seated positioning. She should probably start part time and gradually increase to a full time basis. Given her history of depression, she will need psychological and psychiatric support.[67]

The ALJ gave "some weight" to Dr. Dowler's opinion but rejected the limitation to sedentary work because that limitation "seem[ed] to reflect the claimant's excessive pain complaints."[68] The ALJ noted that Dr. Dowler had a "frank discussion" with plaintiff about her chronic pain because Dr. Dowler felt that plaintiff's pain ratings were too high and did not match her activity level during testing.[69] Because Dr. Dowler's opinion was contradicted by Dr. Caldwell's and Dr. Zamani's opinions, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Dowler's opinion. <u>Lester</u>, 81 F.3d at 830-31.

Plaintiff argues that Dr. Caldwell's opinions cannot constitute substantial evidence

---

[67]Admin. Rec. at 892.

[68]Admin. Rec. at 29.

[69]Admin. Rec. at 28.

supporting the ALJ's rejection of Dr. Dowler's sedentary limitation. Plaintiff argues that Dr. Caldwell's April 9, 2008 opinion cannot be considered substantial evidence because Dr. Caldwell did not have sufficient information to review, primarily because plaintiff had not yet had her total right hip replacement. As for Dr. Caldwell's January 4, 2011 opinion, that opinion is entirely based on Dr. Dowler's 2009 opinion. Plaintiff argues that it cannot constitute substantial evidence for rejecting Dr. Dowler's opinion because the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinions of an examining physician. Lester, 81 F.3d at 830–31.

The ALJ did not however discount Dr. Dowler's opinion because it was inconsistent with Dr. Caldwell's opinions. Rather, the ALJ rejected Dr. Dowler's opinion that plaintiff was limited to sedentary work because this "limitation seem[ed] to reflect [plaintiff's] excessive pain complaints."[70] Given that the ALJ did not err in finding plaintiff's pain statements less than credible, this was a specific and legitimate reason for rejecting Dr. Dowler's opinion. See Bray, 554 F.3d at 1228 ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's [opinion] that was based on those less than credible statements.").

Plaintiff next argues that the ALJ erred in failing to consider the lay testimony of John Micks, plaintiff's Division of Vocational Rehabilitation (DVR) counselor. Plaintiff

---

[70]Admin. Rec. at 29.

worked with DVR from February 19, 2009 through March 26, 2010.[71]  As part of that effort,

plaintiff worked at NANA as a volunteer in the accounting department from January 28,

2010 through March 16, 2010 for fours per day.    On March 26, 2010, Micks opined that

plaintiff

> is unable to lift, bend, stoop and ambulates very slowly.  She
> is unable to file into upper or lower file cabinets.  She is only
> able to sustain a four hour work day without significant fatigue
> and discomfort.  She ... was unable to perform all aspects of a
> sedentary clerk position within NANA Corporation.  She
> demonstrated a good work ethic [but] was unable to sustain
> anymore than a part-time schedule.  This counselor recom-
> mended a referral to SSDI as her disability has increased to the
> extent that an MRI will be performed by her treating doctor at
> ANMC.  The combination of disabilities preclude Ms. Darling
> from even sedentary work activities for more than a part-time
> schedule.[72]

The ALJ did not mention or discuss Micks' opinion.  Micks' opinion was competent

lay testimony.  It is error for an ALJ to disregard competent lay testimony.  Stout, 454 F.3d

at 1053.

"Where the ALJ's error lies in a failure to properly discuss competent lay testimony

favorable to the claimant, a reviewing court cannot consider the error harmless unless it can

confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

have reached a different disability determination."  Id. at 1056.  Given that Micks' opinion

---

[71]Admin. Rec. at 158-160 & 228-267.

[72]Admin. Rec. at 228.

that plaintiff could only work four hours per day was based on an actual work attempt, the ALJ's failure to consider Micks' opinion was not harmless.

Plaintiff next argues that she was denied due process because the ALJ was clearly biased against her. "To succeed in this claim, [plaintiff] must show that 'the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment.'" <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214-15 (9th Cir. 2005) (quoting <u>Rollins v. Massanari</u>, 261 F.3d 853, 858 (9th Cir. 2001)). The court "must begin with a presumption that the ALJ was unbiased." <u>Id.</u> at 1215. Plaintiff "can rebut this presumption by showing a "'conflict of interest or some other specific reason for disqualification.'" <u>Id.</u> at 1215 (quoting <u>Schweiker v. McClure</u>, 456 U.S. 188, 195 (1982)).

Plaintiff argues that the ALJ cobbled together pieces from prior disability claims in such a manner as to make it difficult to figure out what was what in the ALJ's decision. Plaintiff contends that the ALJ did not do a mental assessment and that the ALJ simply discounted her evidence without justification. Plaintiff contends that ALJ mischaracterized Dr. Dowler's and Dr. O'Connell's opinions as criticizing her when really both doctors were acting as caring professionals and both of them found that plaintiff was giving good effort during testing. Plaintiff contends that the ALJ concluded that Dr. Dowler found that plaintiff was magnifying her pain, when in reality, Dr. Dowler did not criticize plaintiff but rather helped plaintiff with her perspective about pain assessment, to which plaintiff

responded positively and with enthusiasm. Plaintiff also points out that Dr. O'Donnell recommended that she pursue Social Security benefits back in 2007.[73] Plaintiff contends that even though there was no evidence of malingering, the ALJ seemed to suspect that there might be and that this suspicion was an undercurrent throughout the ALJ's decision.

Plaintiff has not shown that the ALJ was biased. The ALJ's eleven-page opinion is not cobbled together pieces of prior disability applications. Rather, the ALJ applied the five-step sequential analysis in a straightforward manner, explaining what evidence he was considering at each step. The fact that the ALJ may have committed some errors in his analysis does not mean that he was biased against plaintiff.

Plaintiff also argues that a de facto reopening occurred here and thus the court should rule that she has been disabled since December 2, 2002, the onset date on her first application. "An ALJ can effectively reopen a prior application by later considering, on the merits, whether a claimant was disabled during a period that has already been adjudicated." Miglioretto v. Comm'r Social Sec. Admin., Case No. 6:12–CV–01136–JE, 2013 WL 4876022, at *15 (D. Or. Sept. 11, 2013). Here, the ALJ did not mention plaintiff's prior application, but plaintiff nonetheless argues that there was a de facto reopening because the ALJ repeatedly cited to evidence that predated the August 5, 2010 application. Although there is no "Ninth Circuit ruling that addresses whether an ALJ can de facto

_____

[73]Admin. Rec. at 1187.

reopen a prior application by merely considering evidence from the time period relevant to that application[,] [s]everal other circuits ... have held that the consideration of such evidence, on its own, is insufficient to cause a de facto reopening of a decision." Argueta v. Colvin, Case No. SACV 11–1498–MAN, 2013 WL 3337674, at *11 (C.D. Cal. July 1, 2013). Here, "[a]lthough [the ALJ] considered medical evidence from before [plaintiff's] alleged date of onset, he did not make a determination 'on the merits' [of] the issue of the claimant's disability during the already-adjudicated period.'" Petersen v. Barnhart, Case No. 05–35496, 2006 WL 3786665, at *3 (9th Cir. Dec. 20, 2006) (quoting Lester, 81 F.3d at 827 n.3). There was no de facto reopening here.

Because the ALJ erred as to Micks' opinion and this error was not harmless, the court must consider whether to remand this case for benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from

the record that the ALJ would be required to find the claimant
disabled were such evidence credited.

Id. Here, a remand for benefits is appropriate. Micks opined that plaintiff, although

demonstrating a good work ethic, could not sustain more than a part-time work schedule.

The court may credit this evidence as true. See Schneider v. Comm'r of Social Sec. Admin.,

223 F.3d 968, 976 (9th Cir. 2000) (crediting as true improperly rejected lay-witness

statements). The vocational expert testified that there would be no work in the national

economy for a person who is "unable to engage in sustained work activity for a full eight

hour workday on a regular and consistent basis[.]"[74]

Conclusion

Based on the foregoing, the Commissioner's decision is reversed, and this matter is

remanded for an award of benefits based on plaintiff's amended onset date of January 30,

2008.

DATED at Anchorage, Alaska, this 19th day of March, 2014.

/s/ H. Russel Holland
United States District Judge

---

[74]Admin. Rec. at 63-64.